# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
## JUNE SESSION, 1999

FILED

July 2, 1999

Cecil Crowson, Jr.
Appellate Court
Clerk

STATE OF TENNESSEE,           )
                             )
     Appellee           )
                             )
vs.                          )
                             )
DAVID ALLEN SNOWDEN,         )
                             )
     Appellant          )
                             )

No. 03C01-9810-CR-00357

HAMILTON COUNTY

Hon. Douglas A. Meyer, Judge

(Poss. of Cocaine For Resale)

CERTIFIED QUESTION OF LAW

For the Appellant:

Johnny D. Houston, Jr.
Houston & Warren
Suite 402, Flatiron Bldg.
707 Georgia Avenue
Chattanooga, TN  37402-2048

For the Appellee:

Paul G. Summers
Attorney General and Reporter

Marvin S. Blair, Jr.
Assistant Attorney General
Criminal Justice Division
425 Fifth Avenue North
2d Floor, Cordell Hull Building
Nashville, TN 37243-0493

William H. Cox III
District Attorney General

Bates Bryan
Asst. District Attorney General
City and County Courts Building
600 Market Street
Chattanooga, TN  37402

OPINION FILED: _____

REVERSED AND DISMISSED

David G. Hayes
Judge

**OPINION**

The appellant, David Allen Snowden, appeals from a judgment of conviction entered by the Hamilton County Criminal Court. The appellant entered a best interest guilty plea on February 2, 1998, to possession of cocaine for resale, a class B felony, see Tenn. Code Ann. 39-17-417(c)(1) (1996 Supp.), reserving the right to appeal as a certified question of law the trial court's denial of his motion to suppress. See Tenn. R. App. P. 3(b); Tenn. R. Crim. P.37(b).[1] Specifically, he argues that the police lacked either reasonable suspicion or probable cause to initiate seizure of his person.

After review of the record, we reverse the judgment of the trial court and dismiss the judgment of conviction.

**Background**

The proof at the suppression hearing revealed the following facts. At about 11:00 p.m. on October 21, 1996, Chattanooga Police Officers Nathan Vaughn and Rick Cook were on patrol in separate cars on or about Stuart Street in East Chattanooga. Officer Vaughn, driving the lead patrol car,

> observed the [appellant] and a second party standing in the middle of the street at approximately 2600 Curtis Street. . . . The parties appeared to be involved in some type of casual exchange.[2] This is a known drug area where known drug arrests have been made in the past. When the parties looked up and observed the police cars approaching, they turned, began leaving in opposite directions in a quick manner. I stopped my patrol car and asked the [appellant] there to stop, I wanted to talk to him further, for further investigation.

---

[1]The admissibility of the evidence sought to be suppressed by the appellant is a dispositive issue in this case due to the lack of other sufficient evidence connecting the appellant with the commission of the offense.

[2]Officer Cook, who was driving in the rear patrol car, testified at the suppression hearing that when he observed "[the two individuals], they were standing in the street real close to each other is all."

[The appellant] moved quickly, ["faster than a normal paced walk, but it wasn't . . . a run,"] to the door of a house there on the corner, attempted to go inside. I told him to stop, but he refused. He continued to try to enter the door. I attempted to physically stop him from entering the house there.[3] We became involved in a struggle, him trying to go in, I was trying to keep him from going in.[4] During the struggle, I told the [appellant] that he was under arrest.[5] He continued to struggle at this point, then Officer Cook came to my assistance. We were both able to get the party subdued and into handcuffs.

Because a crowd had gathered, the officers conducted a pat-down search for weapons, placed the appellant in Cook's patrol car, and transported him to jail. After releasing the appellant to the custody of the corrections officers, Officer Cook, per his usual practice, examined the rear seat of his patrol car in search of contraband. His search revealed a cellophane bag which was later determined to contain 12.3 grams of crack cocaine. The discovery of this contraband led to the appellant's conviction.

Based upon this evidence, the trial court denied the appellant's motion to suppress. In doing so, the trial court found:

. . .[I]n this case, you had -- when he was suspicious, when he suddenly left the way he did and the other person went the other direction, and you've got to remember before your client was ever actually arrested, Officer Cook had followed the other individual, had stopped the other individual, recognized him as a known drug violator, and when he got back up to where Mr. Vaughn was attempting to arrest Mr. Snowden, he had that further information when he was assisting, so I think that there's an articulable suspicion there that allowed them to do what they did, so let your motion to suppress be denied.

---

[3] During Officer Vaughn's encounter with the appellant, Officer Cook proceeded to follow the other male subject. Although Officer Cook discontinued pursuit of this second person to assist Officer Vaughn, he recognized the subject as an identified drug offender whom he had recently arrested for "crack paraphernalia . . . right there at that intersection. . . ."

[4]Officer Cook testified that, by the time he was able to assist Officer Vaughn, "[Vaughn and the appellant] were already in the house . . . [w]e pulled him outside the house into the yard."

[5]Officer Vaughn placed the appellant under arrest for "resisting arrest." At this time, no contraband had been discovered on the appellant's person or, otherwise, in his possession. The charge of "resisting arrest" was ultimately dismissed.

**Analysis**

In his sole issue, the appellant contends that the trial court erred by denying his motion to suppress evidence. Specifically, he argues that the seizure of his person was illegal because Officer Vaughn did not have reasonable suspicion or probable cause to seize or stop him.[6]

In reviewing the trial court's denial of a Motion to Suppress, we accept the trial court's findings of fact unless the evidence preponderates otherwise. See State v. Yeargan, 958 S.W.2d 626, 629 (Tenn.1997). However, the law as applied to those facts is subject to *de novo* review. Id. The defendant bears the burden of demonstrating that the evidence preponderates against the trial court's findings. State v. Odom, 928 S.W.2d 18, 22-23 (Tenn.1996).

Our review of this case is handicapped by the fact that the trial court essentially found no facts relevant to the initial detention of the appellant as he attempted to enter his residence. Rather, the trial court focused upon Officer Cook's subsequent discovery of the other individual's identity as a "drug violator" in justifying the seizure. The testimony of both Officer Vaughn and Officer Cook, however, clearly indicates that the "seizure" had already occurred by the time Officer Cook had learned the other individual's identity. Moreover, there is no evidence that Officer Cook had communicated his discovery to Officer Vaughn prior to or during the seizure of the appellant. Accordingly, the proof clearly preponderates against the trial court's findings. Notwithstanding the trial court's incomplete findings, we are able to substantially supplement its findings from the record; thus, enabling this court to conduct a meaningful *de novo* review of the law applicable to the pertinent facts.

---

[6] A person is "seized" for purposes of the Fourth Amendment whenever an officer accosts that individual and restrains the freedom to walk away. See State v. Downey, 945 S.W.2d 102, 106 (Tenn. 1997). In the present case, the appellant was "seized" when Officer Vaughn physically attempted to prevent the appellant from entering his residence.

In furtherance of the State's interest in effective crime prevention and detection, "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest." Terry v. Ohio, 392 U.S. 1, 22, 88 S.Ct. 1868, 1880 (1968). In other words, an investigatory stop of a person is constitutionally permissible if the officer has a reasonable suspicion, supported by specific and articulable facts, that a criminal offense has been or is about to be committed. State v. Simpson, 968 S.W.2d 776, 780 (Tenn. 1998). In determining whether articulable and specific facts support an officer's reasonable suspicion, the court must consider the totality of the circumstances, which include but are not limited to objective observations, information obtained from other police officers or agencies, information obtained from citizens, and the pattern of operation of certain offenders. See State v. Lawson, 929 S.W.2d. 406, 408 (Tenn. Crim. App. 1996). The court may also consider the rational inferences and deductions that a trained police officer may draw from the facts and circumstances known to him. Id. The court must then decide, whether under a standard of objective reasonableness, these facts would give rise to a reasonable suspicion justifying a stop. . . ."[7] Ornelas v. United States, -- U.S. at --, 116 S.Ct. 1657, 1664 (Scalia, J. dissenting).

Reasonable suspicion may in some circumstances be established by the high speed flight of individuals made in order to avoid confrontation with the police. See WAYNE R. LAFAVE, SEARCH AND SEIZURE § 9.4(f) (1996 & 1999 Supp.). Although the record indicates that the appellant walked "quickly" to his house which was within 100 to 150 feet from where he was standing when initially observed, we would be constrained to conclude that this act constituted "high speed flight" sufficient to

---

[7]We stress that the standard is an "objective" one, *i.e.*, "would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate.'" Terry v. Ohio, 392 U.S. at 21, 88 S.Ct. at 1880 (citations omitted). Indeed, the "simple 'good faith on the part of the arresting officer is not enough.'" Id. at 22, 88 S.Ct. at 1880 (quoting Beck v. Ohio, 379 U.S. 89, 97, 85 S.Ct. 223, 229 (1964)).

establish a "reasonable suspicion."[8]  Next, Officer Vaughn testified that he observed

what he believed to be a "casual exchange" of illegal drugs between the appellant

and another individual.  He admitted, however, that he did not see the two men

exchange any substances, objects, or money.[9]  Indeed, Officer Vaughn provided no

additional facts to support his belief that he had observed such a "casual exchange."

See Alabama v. White, 496 U.S. 325, 329, 110 S.Ct. 2412, 2416 (1990) (officer

must be able to articulate something more than inchoate and unparticularized

suspicion or hunch).  Finally, while an area identified by the police as a "high crime

area" may support reasonable suspicion when coupled with other circumstances,

the individual's presence alone is not sufficient.  See generally Brown v. Texas, 443

U.S. 47, 52, 99 S.Ct. 2637, 2641 (1979); see also Lawson, 929 S.W.2d at 408.

The mere fact that the appellant was standing with another individual in a high crime

area does not elevate the circumstances into a reasonable suspicion of criminality.

See Lawson, 929 S.W.2d at 409 (quoting Bower, 156 Cal.Rptr. at 860, 597 P.2d at

119).  Many individuals, such as the appellant in the present case, are forced to live

in areas that have high crime rates; thus, his mere presence in these areas is

---

[8]Numerous jurisdictions have addressed the difficult question of whether an individual's "flight" from police officers, in and of itself, justifies a stopping for investigation with varying results. See, e.g., People v. Bower, 156 Cal. Rptr. 856, 597 P.2d 115 (1979), *superseded on other grounds by constitutional amendment as recognized in*, People v. Lloyd, 6 Cal. Rptr.2d 105 (Cal. App. 4 Dist. 1992) (walking away from police officer at fast pace considered with other suspicious circumstances not sufficient for stop, as defendant was simply exercising his right to privacy); People v. Padgett, 932 P.2d 810 (Colo. 1997) (where defendant ignored officer's request to come to him, such "attempt to avoid coming into contact with a police officer does not, without more, justify an investigative detention); Cauthen v. United States, 592 A.2d 1021 (D.C.App. 1991) (walking away fast not sufficient, as it is necessary that "the manner of flight suggests consciousness of guilt rather than a mere desire not to interact with the police"); Sams v. State, 265 Ga. 534, 459 S.E.2d 551 (1995) (various factors, including that defendant purportedly "sought to avoid an encounter with the police" not sufficient where defendant "walked away from the officer in a way that the officer described as normal"); Gurrola v. State, 877 S.W.2d 300 (Tex. Crim. App. 1994) (fact that persons engaged in argument walked off when police officer approached no grounds for stop, but merely exercise of "the right of American citizens to refuse to answer questions by police officers who have no reasonable suspicion"). Compare United States v. Sholola, 124 F.3d 803 (7th Cir. 1997) (reasonable suspicion based in part on fact of defendant "walking briskly in opposite direction"); United States v. Quinn, 83 F.3d 917 (7th Cir. 1996) (group "continued to behave suspiciously by scattering and then attempting to head off in opposite directions"); State v. Roach, 677 A.2d 157 (N.H. 1996) (grounds to stop person peeking out of alley in area known for drug activity when he "quickly reversed direction" on approach of squad car).

[9]On cross-examination, Officer Vaughn admitted that, he "didn't see anything exchanged," rather, "[the appellant] just appeared to be involved in an exchange."

insufficient to transform the circumstances into that justifying a seizure of the individual.  Id.

Our review of the facts relied upon by Officer Vaughn to justify his initial seizure of the appellant support only the conclusion of "innocent activity."  Because Officer Cook had not yet identified the appellant's companion as a known drug offender at the time of Officer Vaughn's seizure of the appellant,  we conclude that the observance of "innocent activity," accompanied only by an officer's unsubstantiated "belief or hunch," fails to provide a rational basis that "criminal activity is afoot."

For the reasons stated above, we conclude that the officer's detention of the appellant constituted an unlawful seizure.  Accordingly, we reverse and dismiss the appellant's conviction.

_____
DAVID G. HAYES, Judge

CONCUR:

_____
JOHN H. PEAY, Judge

_____
JOHN EVERETT WILLIAMS, Judge

7